UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANA CROFT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SCI OF ALABAMA, d/b/a FUNERAL )<br>SERVICES OF ALABAMA, )<br>)<br>Defendant. ) | CV 02-B-0169-S |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Partial Summary Judgment. (Doc. 52.) Plaintiff Diana Croft has sued her former employer, defendant SCI of Alabama, doing business as Funeral Services of Alabama, alleging that defendant discriminated against her on the basis of her sex and in retaliation for engaging in protected activity, in violation of federal law. Plaintiff also alleges state-law causes of action for misrepresentation, breach of contract, misappropriation of trade secrets, and unjust enrichment, in violation of state law. Defendant has moved for summary judgment only as to plaintiff's state-law claims, which it contends are due to be dismissed on the ground that such claims are preempted by § 301 of the Copyright Act. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Partial Summary Judgment, (doc. 52), is due to be denied.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

2

## II. STATEMENT OF FACTS

Defendant hired plaintiff as a Sales Manager in March 1999. (Doc. 36 ¶ 6.) At that time, plaintiff had about 19 years of experience in the funeral business. (*Id.* at 16.) Using her experience, plaintiff developed two marketing programs for use by funeral homes and cemeteries – the Millennium Funeral Concepts ["MFC"] program and a time capsule program. (*See id.* ¶ 16, 24.) Plaintiff's state-law claims arise from her allegation that defendant wrongfully used her concepts and programs, without permission or compensation, to create similar programs.

### A. MFC PROGRAM

Plaintiff developed the MFC program prior to being hired by defendant in 1999. (*Id.* ¶ 16.) "The MFC programs were customized packaged programs that would combine service and merchandise that would be offered to a client to complete their pre-arrangement funeral and cemetery needs." (*Id.*) According to plaintiff's testimony, her MFC program was unique because –

> Number 1, it was organized; Number 2, it was consistent, easy to follow, colorful for our industry; it was unique; it was user-friendly, customer-friendly, counselor-friendly.
>
> . . .
>
> . . . And it was a one-of-a-kind program. There was no other programs [sic] that I had any knowledge of in this industry that put packages together in that form.
>
> . . .

3

> All I had ever seen anybody do in this business was take a legal pad and just try to figure out what the customer wanted or what they should buy and just write it down on a legal pad and then turn it around and pretty much say, is this what you wanted? The packaging and the color and the format, the consistency and the – being extremely organized.

(Doc. 53, Ex. B at 41-42.)

Plaintiff and defendant entered into a "non-exclusive end-user license agreement for [MFC] programs" in March 1999, which authorized defendant to use the MFC program at its Milton, Florida facility. (*See* doc. 53, Ex. D.) Plaintiff alleges that defendant told her that her MFC program would be implemented "throughout the SCI system." (Doc. 36 ¶ 18.) However, defendant did not implement plaintiff's program during her employment. (*See id.* ¶ 21, 31; doc. 53, Ex. B at 45.) Plaintiff resigned in December 2000.[1] (*Id.* ¶ 31.)

After, plaintiff resigned, defendant implemented a sales package program called Dignity. (Doc. 53, Ex. B at 99.) Plaintiff contends that Dignity is based on her MFC program; she testified:

> Dignity is a sales program that [defendant] uses company-wide that is a re-engineered version of the [MFC] in that they streamlined it down to a number, . . . put names on packages, pictures of the services collectively together, gave a unit price to families that would buy the package and used it as a program that would have benefits, and the people could get the best price only if they bought a Dignity package. And the look of the laminated sheets, the selling sheets that . . . counselors use look exactly like the same concept of making a visual for the consumer to be able to see what the package entails and to make it simple by putting a price on those particular services and merchandise.

---

[1]Plaintiff contends she was constructively discharged. (Doc. 36, ¶ 31.)

(*Id.* at 99-100.) Defendant's use of color in its Dignity program was "significant" to plaintiff. (*Id.* at 122.) She testified, "The [MFC] program was full color, and sales material in the funeral industry had been very dull and pretty black and white, and one of the features that came through the development of that was color, just give some color to the customer and not just a legal pad scratch notes." (*Id.* at 122-23.) She also testified:

> [W]hen I finally saw the Dignity package, the colors, the format, and – was a real easy leap to go from . . . pages of [MFC] to this Dignity.
>
> . . .
>
> The same concept of presenting the consumer with a written or professionally done presentation sheet that recaps what they're buying, visually gives them a picture of – instead of 20 caskets in a sales book, the one they picked out that they wanted. That concept of getting everything put together for the consumer and a price all on – in one package so that the customer knew what they were purchasing. It was – it's an easy leap to see the re-engineering.

(*Id.* at 123-24.)

**B. TIME CAPSULE PROGRAM**

Plaintiff also developed a time capsule program, which she contends defendant has misappropriated as its own. Plaintiff developed the time capsule program as a way to generate leads.[2] (Doc. 36 ¶ 24.) She testified that she had the idea that families would create

---

[2]Plaintiff testified –

> [T]he whole purpose of the time capsule was to solicit the genealogy of each person that put a deposit there of their living relatives and deceased relatives, . . . and they would be told at the time that they reserved one of those 500 time capsules . . . that we would give . . . those families that they gave us the names on this genealogy, we would hold it in our office, and we

5

a physical time capsule, which would be opened after a designated number of years. (Doc. 53, Ex. B at 101-02.) After she resigned, she discovered that defendant had created the "Making Everlasting Memories" program, which she described as her time capsule concept "but on the internet;" she testified that defendant "took the physical out of it and turned it into the same concept, but on the internet." (*Id.* at 105.) She testified:

> The concept of asking someone to buy a program from a funeral home or the cemetery . . . that the company would be responsible for the maintenance of either the time capsule vault or the maintenance of the internet retrieval . . . . But the family is paying – they were going to pay for the time capsule and they're paying for Making Everlasting Memories – a vehicle to do the same thing – store precious memories.

(*Id.* at 105-06.)

### III. DISCUSSION

Defendant contends that plaintiff's state-law claims of breach of contract, fraud, misappropriation of trade secrets, and unjust enrichment are preempted by federal copyright law, pursuant to 17 U.S.C. § 301. (Def. Mem. at 3.)

Section 301 of the Copyright Act provides:

---

would search through those names and numbers at the time of the opening of the time capsule to return the time capsule. But more than that, we would use those referrals, those names of all those people, which there were places for 26 names on that genealogy profile – we would call those people up or go see them or send them written advertisement stating to them that their family member had reserved a time capsule with an SCI location and wanted them to know and have an opportunity to reserve one also, and we would include some sort of advertisement.

(Doc. 53, Ex. B at 103-04.)

> (a) ... [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title. ...
>
> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to –
>
>> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or
>>
>> ...
>>
>> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . .

17 U.S.C. § 301(a), (b)(1) and (3).

Plaintiff argues that her state law claims are not preempted by the Copyright Act because her programs are not works that "come within the subject matter of copyright as specified by section 102 and 103," because her programs are ideas and concepts, not expressions. (Pl. Br. in Resp. to Mot. for Summ. J. at 4-5 (quoting 17 U.S.C. § 301(a); citing 17 U.S.C. § 102(b)).) She argues that her "marketing and sales programs at issue here were chiefly comprised of her own unique ideas – ideas which [she] alleged were stolen by Defendant." (*Id.* at 5.) The court agrees that plaintiff's MFC program and time capsule program are not within the subject matter of copyright.

Plaintiff repeatedly testified that her claims were based on defendant's misappropriation of her ideas or concepts of her programs; she does not contend that

7

defendant misappropriated her "expressions" of such ideas or concepts. "Copyright protection subsists . . . in ***original works of authorship fixed in any tangible medium of expression*** . . . from which they can be perceived, reproduced, or otherwise communicated . . . ." 17 U.S.C. § 102(a)(emphasis added). Copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b). "Copyright does not preclude others from using the ideas or information revealed by the author's work." *Id.*, Historical and Statutory Notes, Notes of Committee on the Judiciary, House Report No. 94-1476; *see Eldred v. Ashcroft*, 537 U.S. 186, 217 (2003); *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985)("No author may copyright his ideas . . . .").

Plaintiff contends that defendant took her ideas or concepts for marketing funeral and burial services, re-engineered them, and used her ideas or concepts as its own in the form of the Dignity program and the Making Memories Last program. Because plaintiff's claims are based on defendant's use of her concepts and ideas, and not her expressions, plaintiff's "work" at issue – the MFC program and the Time Capsule program – do not "come within the subject matter of copyright as specified in [17 U.S.C. § 102]." 17 U.S.C. § 301(a). Thus, her state-law claims are not preempted by § 301, and defendant's Motion for Partial Summary Judgment will be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff's state-law claims are not preempted by § 301 of the Copyright Act, and, therefore, defendant is not entitled to judgment as a matter of law as to plaintiff's state-law claims. An order denying defendant's Motion for Partial Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 29th day of September, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge